## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD MARTIN,<br>        Plaintiff, | |
| v. | No. 3:12-cv-01384 (JAM) |
| JAYE BAILEY and SHYAM LODHA,<br>        Defendants. | |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Edward Martin used to be a part-time lecturer of Marketing at Southern Connecticut State University ("SCSU"). In the Fall of 2010, however, it became apparent that plaintiff had fabricated large swaths of the academic credentials on his *curriculum vitae* ("CV"). He listed a Harvard post-doctorate program that he had never attended, as well as nearly a dozen academic articles that he had never published. Despite being given numerous opportunities to explain himself over a period of months, plaintiff failed to provide any evidence to substantiate the false claims on his CV. As a result, after his semester-long contract expired for the Fall of 2010, he was not offered any further lecturer contracts for subsequent semesters at SCSU.

Plaintiff thought he was wronged. He filed this lawsuit contending that SCSU did not let him teach anymore in order to retaliate against him for the exercise of his First Amendment rights and in violation of his rights under the Due Process Clause. He has sued two individual defendants: Jaye Bailey, Associate Vice President of Human Resources and Labor Relations at SCSU, and Shyam Lodha, a full professor and head of the Marketing Department at the SCSU School of Business. Defendants now move for summary judgment, and plaintiff has filed a response stating that he does *not* oppose the motion. Because there are no genuine issues of fact

1

remaining for trial, I will grant summary judgment in defendants' favor.

**BACKGROUND**[1]

Plaintiff was an adjunct lecturer at SCSU from 2002 through 2010. During that entire period, he worked at the university pursuant to time-limited contracts to teach for a specific semester at a time. Defendant Shyam Lodha has been employed by SCSU since 1983 and has long been a full professor in the Marketing Department of the SCSU School of Business. Both he and plaintiff were members of a faculty union, and the two apparently enjoyed a close relationship from 2002 to 2010.

In May 2010, plaintiff met with Connecticut State Representative Peter Villano at Rep. Villano's home, where the two discussed their concerns over issues related to SCSU's governance and spending. Not long after that meeting occurred, plaintiff told Lodha about it.

Three months later, in August 2010, plaintiff received a contract to teach part-time at SCSU during the Fall 2010 semester. As with his previous adjunct teaching contracts at SCSU, that contract did not provide any guarantee of employment beyond the semester it covered. Plaintiff's faculty union collective bargaining agreement, which was in effect during the Fall 2010 semester, also provided that "part-time members have no guarantee of continuing employment." Doc. #41-2 ¶ 35. Plaintiff and SCSU undisputedly completed the terms of the Fall 2010 teaching contract.

Meanwhile, faculty and administration at the SCSU School of Business had raised concerns about academic articles that plaintiff claimed on his CV to have published in prestigious journals and periodicals. When they could not locate the articles, they referred the matter to Human Resources for further investigation. Human Resources was similarly unable to

---

[1] In view of plaintiff's indication that he does not oppose defendants' motion for summary judgment, the well-supported factual allegations set forth in defendants' Rule 56 statement (Doc. #41-2) are deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

locate the articles and called plaintiff in September 2010 to discuss the matter.

Over the course of October and November 2010, plaintiff participated in several meetings and was asked repeatedly to provide documentation of the unsubstantiated claims on his CV—specifically, that he had engaged in post-doctorate work at Harvard University and that he had published at least 11 articles that could not be located. After the first scheduled meeting with Human Resources employee Diane Mazza, which plaintiff chose not to attend, plaintiff revised his CV but neither deleted the false publication listings nor provided evidence of those publications.

A second meeting took place between plaintiff and Lodha outside of his office, where the two discussed the inaccuracies on plaintiff's CV. Mazza then scheduled an additional meeting with plaintiff and his union, but plaintiff did not attend the scheduled meeting. Mazza advised that plaintiff would need to produce evidence of his publications by November 23, 2010.

The day before that deadline, plaintiff met with Mazza and defendant Jaye Bailey, the Associate Vice President of Human Resources and Labor Relations at SCSU. At that meeting, plaintiff became agitated and started shouting, but still presented no evidence that he had actually attended Harvard or published the articles in question.

Plaintiff's CV listed several schools under a heading for "Education," including the following entry: "Harvard University Post Doctorate *Man.&Mkt Major. Economics-Minor.*" Doc. #41-4 (Exh. F) at 159.

At his deposition in this action, the following interchange occurred with plaintiff:

Q      Okay. Did you ever attend Harvard, sir?
A.      I was there. I didn't pay any courses. I was there for one class, actually, two classes. I just observed.
Q.      So you weren't an official student.
A.      No. Absolutely, unequivocally not.
 . . . .

Q.      You list Harvard University Post Doctorate on this [CV] in your education.

A.      I was going to take courses there and decided not to.

Doc. #41-4 (Exh. A, Pl.'s Dep.) at 22, 80.

Bailey discussed the results of her meeting with Dean Ellen Durnin of the School of

Business, and Dean Durnin decided that plaintiff should no longer be offered further lecturer

appointments at SCSU. Bailey informed plaintiff of this decision via letter in January 2011.

In 2012, plaintiff filed suit in state court against Bailey and Lodha, alleging that their

actions were undertaken in retaliation against him for exercising his First Amendment right to

freedom of speech and that those actions deprived him of procedural and substantive due process

under the Fourteenth Amendment. Defendants timely removed the case to federal court and now

move for summary judgment. Plaintiff has indicated through his counsel that he does not oppose

their motion.

**DISCUSSION**

The principles governing a motion for summary judgment are well established. Summary

judgment may be granted only "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of

material fact 'exists for summary judgment purposes where the evidence, viewed in the light

most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's

favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v.

Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment

stage must be viewed in the light most favorable to the non-moving party and with all

ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S.

Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a

4

'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Plaintiff's response to defendants' motion for summary judgment states: "[a]fter discussion between the plaintiff and counsel, the plaintiff advises that he will not oppose the defendants' motion for summary judgment." Doc. #46 at 1. My task is to determine, on the basis of the unopposed motion and statement of undisputed facts, whether defendants have met their burden of demonstrating the absence of any material issue of fact for trial and their entitlement to summary judgment on all claims against them. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014). I conclude that defendants easily have met their burden.

At the outset, Lodha is entitled to summary judgment because he played no role in any adverse actions against plaintiff. *See* Doc. #41-2 ¶ 75. Lodha was not consulted by anyone in the decision not to offer plaintiff additional lecture contracts and had no authority to make any decisions himself with regard to faculty employment. *Ibid.* Liability for a constitutional violation under 42 U.S.C. § 1983 may be imposed only on government actors who are personally involved in alleged deprivations of constitutional rights. *See Raspardo v. Carlone*, 770 F.3d 97, 122 (2d Cir. 2014); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004). Because Lodha was not personally involved in or responsible for any alleged constitutional deprivations, I grant summary judgment in favor of Lodha on all claims against him, and consider the remaining claims as against Bailey only.

A claim under 42 U.S.C. § 1983 for First Amendment retaliation exists when a government actor takes negative action against an individual because of the exercise of his First Amendment rights. In order to make out a *prima facie* case of First Amendment retaliation,

plaintiff must show that "(1) he engaged in protected First Amendment activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (quoting *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007)). The third factor (causation) is satisfied when allegations are "sufficient to support the inference that the speech played a substantial part in the adverse action." *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003) (internal quotation marks and citation omitted). Causation can be established either directly, by showing retaliatory animus, or indirectly, by showing that the protected activity was followed closely by the adverse action; such a showing must involve "'tangible proof,'" not merely "'conclusory assertions of retaliatory motive.'" *Smith*, 776 F.3d at 118–19 (quoting *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)).

Plaintiff cannot make out a *prima facie* case of First Amendment retaliation. To come to this conclusion, I need not address whether plaintiff's conversation during his meeting with Rep. Villano constituted protected speech under the First Amendment, or whether the decision to advise against re-hiring plaintiff for semesters after Fall 2010 constituted an adverse employment action on the part of Bailey, because no reasonable jury could find that the conversation with Rep. Villano played a "substantial part" in the end of plaintiff's career at SCSU. *See Davis*, 310 F.3d at 354. Bailey had no knowledge of the conversation with Rep. Villano until this litigation, Doc. #41-2 ¶ 29. Furthermore, plaintiff was hired for the Fall 2010 semester three months *after* the conversation at issue, a curious timeline if the university was bent on punishing plaintiff for speaking with Rep. Villano.

Even assuming *arguendo* that plaintiff could set forth a *prima facie* showing of retaliation, Bailey would nevertheless be entitled to summary judgment on this claim. To

overcome a *prima facie* showing, a defendant may show "'by a preponderance of the evidence that [she] would have taken the same adverse employment action even in the absence of the protected conduct.'" *Smith*, 776 F.3d at 119 (quoting, *inter alia*, *Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. 274, 287 (1977)). There can be no serious question that the preponderance of evidence shows that plaintiff's employment at SCSU ended at the close of the Fall 2010 semester because of his gross misrepresentations as to his educational background and publications, and would have ended identically in the absence of plaintiff's springtime conversation with Rep. Villano. It is hard to believe that any self-respecting educational institution would continue to employ a teacher in light of such falsehoods. I therefore grant summary judgment to Bailey as to the First Amendment retaliation claims against her.

I turn next to the plaintiff's due process claims. The right to procedural process under the Fourteenth Amendment protects against the deprivation of certain interests in the absence of due process of the law. U.S. CONST. amend. XVI, § 1 ("No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."). In order to withstand summary judgment on his procedural due process claim, plaintiff must first demonstrate a protected property interest in the continued employment he believes he was denied without due process. Here, he cannot succeed. "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambrello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Where a plaintiff has only a "unilateral expectation" of continued employment with no "written or spoken guarantee," he has no constitutionally protected property interest in his continued employment. *Walsh v. Lebanon Bd. of Educ.*, 2013 WL 425092, at *5 (D. Conn. 2013) (citing *Looney v. Black*, 702 F.3d 701, 709–10 (2d Cir. 2012)). And "any

constitutionally cognizable property interest in the expectation of continued employment at an educational institution is 'created and defined by the terms of . . . appointment.'" *Liu v. Austin*, 2007 WL 2438682, at *3 (D. Conn. 2007) (alterations omitted) (quoting, *inter alia*, *Bd. of Regents v. Roth*, 408 U.S. 564, 578 (1972)).

As a part-time, adjunct lecturer, plaintiff's appointment provided no guarantee of continued employment or termination only for "just cause." Nor was plaintiff even discharged from his employment: he completed the Fall 2010 term of his employment contract. Neither plaintiff's employment contract nor his union contract provided any promise of future employment; in fact, his collective bargaining agreement specifically provided that "part-time members have no guarantee of continuing employment." Doc. #41-2 ¶ 35. Because plaintiff had no constitutionally protected right to future employment at SCSU, his procedural due process claim fails at the outset.

Finally, plaintiff's substantive due process claim fails as well. A claim under the doctrine of substantive due process requires an allegation that Bailey deprived plaintiff of a fundamental constitutional right, and that she did so under circumstances that were no less than "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *See United States v. Medunjanin*, 752 F.3d 576, 590 (2d Cir. 2014) (substantive due process has generally protected "'matters relating to marriage, family, procreation, and the right to bodily integrity'" (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality opinion))); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir. 1999) (substantive due process standards violated "only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority"); *Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir. 2005) (describing the "shocks the conscience" standard).

Plaintiff has not alleged that Bailey' actions—recommending to Dean Durnin that plaintiff not be offered additional lecturer contracts—broached any right other than the alleged right to continued employment, which is not constitutionally protected. Nor is there any evidence that Bailey's decision was arbitrary, outrageous, or conscious-shocking in the constitutional sense. On the contrary, the record is clear that Bailey made her recommendation on the basis of the blatant falsehoods in plaintiff's CV and on his "disruptive behavior" when confronted with those inaccuracies. Doc. #41-2 ¶ 74. Because no reasonable jury could find that Bailey violated plaintiff's right to substantive due process, I grant summary judgment to Bailey as to this claim as well.

CONCLUSION

Defendants' motion for summary judgment is GRANTED. The complaint is dismissed with prejudice, and judgment shall enter in favor of defendants on all claims.

The Clerk shall close this case.

It is so ordered.

Dated at Bridgeport this 4th day of March 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge